Victor **SHARROW**, Plaintiff,

v.

**Minna PEYSER and Hamilton Fish, Jr., Defendants.**

No. 76 Civ. 4738 (VLB).

United States District Court, S. D. New York.

Dec. 29, 1977.

**322**

Victor Sharrow, pro se.

Robert B. Fiske, Jr., U. S. Atty., Nathaniel L. Gerber, Asst. U. S. Atty., U. S. Attorney's Office Southern District of N. Y., New York City, for defendant Fish.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Plaintiff Victor Sharrow, proceeding *pro se*, commenced this action on October 26, 1976 with the filing of a complaint against Minna Peyser and Hamilton Fish, Jr., then candidates for the United States House of Representatives from the 25th Congressional District of New York. The relief sought by the complaint was a temporary restraining order enjoining defendants from running for Congress during the election then scheduled for November 2, 1976. In fact, the election was held as scheduled and Congressman Fish was reelected.

The jurisdictional basis alleged in the complaint is Article III, Section 2 of the Constitution.[1] Plaintiff apparently invokes the jurisdiction of this court under the provisions of 28 U.S.C. § 1331: presence of a federal question with more than $10,000 in controversy, and asks that a three judge court be convened pursuant to 28 U.S.C. § 2284 for the purpose of resolving the following question:

> Does Section 2 of the 14th Amendment control completely and constitutionally command the computation for the apportionment of representatives running for Congress?[2]

Plaintiff asserts that the Reapportionment Act of June 18, 1929, c. 28, 46 Stat. 21, set forth as amended in 2 U.S.C. § 2a, is unconstitutional as enforced. Plaintiff specifically questions the constitutionality of the apportionment of the 25th Congressional District of the State of New York, wherein he resides.

The underlying theory of the complaint is that all congressional districts are unconstitutionally apportioned because the Government has failed to enforce Section 2 of the Fourteenth Amendment (hereinafter "14/2") which requires that the basis of representation of each state be reduced by the proportion of 21 year-old males whose right to vote has been abridged.[3] Plaintiff contends that because the congressional district in which defendants were then candidates for Congress is unconstitutionally apportioned, the election should have been enjoined.

Defendant Fish has moved for (1) an order pursuant to Fed.R.Civ.P. 4(c) substituting Robert B. Fiske, Jr., United States Attorney, Southern District of New York, as attorney of record for Fish, in place of Russell E. Aldrich; and (2) an order pursuant to Fed.R.Civ.P. 12(b) dismissing the complaint. Plaintiff has filed a cross-motion for an order (1) granting leave to file an amended complaint; and (2) convening a three judge court pursuant to 28 U.S.C.

---

1. Plaintiff's Complaint at 8.

2. Plaintiff's Complaint at 1 and 11.

3. That section provides:

    Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

§ 2284, such court to hear and determine the outstanding motions.

At the outset I address the question of whether the United States Attorney is authorized to participate in this action on behalf of Fish. Plaintiff opposes such participation, pointing out that Fish is sued in his individual capacity as a private citizen. The United States Attorney's Office has not responded to this point except to claim that substitution is sought sufficiently early in the proceedings as to preclude a finding of prejudice to the plaintiff, and that it will occasion no delay. My interpretation of 28 U.S.C. § 547, wherein the duties of the United States Attorney are prescribed, suggests to me that Fish may not be entitled to be represented by the United States Attorney. However, in light of my ultimate decision on the motion to dismiss, it is unnecessary finally to determine this issue.

The pending motion to dismiss the complaint is predicated upon allegations of plaintiff's lack of standing, the mootness of the issue raised and the failure of the complaint to state a claim upon which any relief can be granted. Plaintiff has responded to this motion by attempting to amend his complaint so as to seek declaratory relief with respect to future Congressional elections and by contending that the recent amendments of the three judge court statute, 28 U.S.C. § 2284, mandate that the action be referred automatically to a three judge court. Defendant has not objected to the cross-motion to amend the complaint and I grant that motion.

■ Regardless of the nature of the relief sought, a single judge has the authority to review a complaint seeking the convening of a three judge court in order to determine whether it states a substantial claim and one over which the Court would have jurisdiction. *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Green v. Board*

of Elections of City of New York, 380 F.2d 445 (2d Cir. 1967); *cert. denied,* 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968). This review by a single judge includes the determination of whether the complaint presents a justiciable controversy and whether a plaintiff has standing. *Lion Mfg. Corp. v. Kennedy,* 117 U.S.App.D.C. 367, 330 F.2d 833 (1964); *Hart v. Kennedy,* 314 F.Supp. 823, 824 (W.D.Okl.1969); *American Commuters Assn. v. Levitt,* 279 F.Supp. 40, 46 (S.D.N.Y.1967), *aff'd,* 405 F.2d 1148 (2d Cir. 1969).

■ Neither the proposed amendment of the complaint so as to seek declaratory relief, nor the recent amendment of the three judge court statute alters this Court's authority. On the contrary, a three judge court need not be convened to determine whether a declaratory judgment should issue.[4] Similarly, the amendments to 28 U.S.C. § 2284 now expressly provide that the single judge to whom the case is initially assigned must first determine whether three judges are required:

> (1) Upon the filing of a request for three judges, the judge to whom the request is presented shall, *unless he determines that three judges are not required,* immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. The judges so designated, and the judge to whom the request was presented, shall serve as members of the court to hear and determine the action or proceeding. (emphasis added).

28 U.S.C. § 2284(b)(1).

■ Plaintiff correctly points out that 28 U.S.C. § 2284(a) as amended expressly applies to actions "challenging the constitutionality of the apportionment of congressional districts . . ." The amendment to this provision does not, however, affect the authority and responsibility of a single judge to ascertain whether the claim is

---

4. *See Stypmann v. City and County of San Francisco,* 557 F.2d 1338, 1341 (9th Cir. 1977); *Finnerty v. Cowen,* 508 F.2d 979, 985–986 (2d Cir. 1974); *Rosario v. Rockefeller,* 458 F.2d 649, 651–652 n.2 (2d Cir. 1972), *aff'd,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). Although these cases were decided pursuant to the Three Judge Court Act, 28 U.S.C. §§ 2281 *et seq.,* as it existed prior to the August 12, 1976 amendments, this aspect was not altered.

**324**

substantial and one over which the court has jurisdiction. Accordingly, it is clear that I have the authority and responsibility to resolve defendant's motion to dismiss the complaint for lack of standing, mootness and insubstantiality.

Plaintiff's claim is not new and has been raised on at least two prior occasions by plaintiff. In *United States v. Sharrow*, 309 F.2d 77 (2d Cir. 1962) the Second Circuit affirmed plaintiff's conviction for refusing to answer census questions in violation of 13 U.S.C. § 221(a) (1958). In affirming, the Court rejected plaintiff's claim that the taking of the census was unconstitutional on the ground that apportionment between the states had not been adjusted in accord with 14/2:

> Irrespective of the Fourteenth Amendment's mandate the Congress, in the present state of the law, is not required to prescribe that census-takers ascertain information relative to disfranchisement.

309 F.2d at 79–80.[5]

In *Sharrow v. Brown*, 319 F.Supp. 1012 (S.D.N.Y.1970) this court (Weinfeld, J.) dismissed plaintiff's complaint which similarly contended that 14/2 requires the Census Bureau to compile statistics on the number of male adults in each State whose right to vote is denied or abridged, so that the House of Representatives may be properly apportioned according to the formula mandated by 14/2. The Second Circuit affirmed the dismissal on the ground that plaintiff had not satisfied the injury in fact requirement of standing. *Sharrow v. Brown*, 447 F.2d 94 (2d Cir. 1971). Specifically, the court found that plaintiff had failed to allege with sufficient particularity that the alleged failure to enforce 14/2 had injured *his* rights of representation in Congress. 447 F.2d at 97.

In the present action plaintiff reasserts the very allegations rejected by this court and the Second Circuit in *Sharrow v.*

*Brown, supra,* albeit against different defendants. Accordingly, plaintiff's claim must fail for lack of standing.

■ The requirements of injury in fact are well settled. A party seeking relief must demonstrate that he is threatened with injury which is both immediate and real, not remote and speculative. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Among other requirements, plaintiff's injury must be one which is "likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Moreover, the party seeking relief must allege a particularized injury which threatens him and cannot rest upon generalized allegations of injury that may be suffered by third persons or by the general public. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In the context of this action, the Second Circuit has articulated the test as follows:

> However, the initial step in plaintiff's allegations as to standing presents difficulty. It could well be that, even if the House of Representatives were apportioned in the manner in which *Sharrow* construes 14/2, New York would not gain back any of its lost representatives. This point was discussed at length in *Lampkin v. Connor*, 239 F.Supp. 757, 760–763 (D.C. D.C.1965), aff'd, 123 U.S.App.D.C. 371, 360 F.2d 505 (1966), a case in which enforcement of 14/2 was also sought. In *Lampkin* the district court held that those plaintiffs who alleged that their States might be entitled to more representatives if 14/2 were enforced lacked standing because the potential results of a reapportionment under 14/2 were entirely speculative. We agree with the court in *Lampkin* insofar as that court implied that standing might be exceedingly hard

---

**5.** In *Saunders v. Wilkins,* 152 F.2d 235 (4th Cir. 1945), *cert. denied* 328 U.S. 870, 66 S.Ct. 1362, 90 L.Ed. 1640 (1946), the issue of reducing a state's representatives pursuant to 14/2 was held to be a "political question" unsuitable for judicial determination. The Second Circuit in

*Sharrow*, 309 F.2d at 80, left open the question of whether this classification survived the Supreme Court decision in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Dictum in *Sharrow v. Brown*, 447 F.2d 94, 97–98 and n.9 (2d Cir. 1971) suggests that it does.

to establish. For instance, to establish standing in the present case, Sharrow would have to show, at least approximately, the apportionment his interpretation of 14/2 would yield, not only for New York but for every other State as well. This would necessitate a state-by-state study of the disenfranchisement of adult males, a task of great proportions. And even after approximate nation-wide reapportionment figures were derived, it might well be that, because of population shifts, or because New York itself disenfranchised a portion of its adult males, New York's representation would not be increased as Sharrow claims. (footnote omitted).

*Sharrow v. Brown, supra* at 97.

■ As in *Sharrow v. Brown, supra,* plaintiff has not established that the alleged failure to enforce 14/2 has resulted in a detriment to his rights of representation in Congress [6].

The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.

*Warth v. Seldin,* 422 U.S. at 517–18, 95 S.Ct. at 2215. Plaintiff having failed to meet this threshold requirement, this claim must be dismissed for lack of standing.

Even were plaintiff to overcome the issue of standing, it is entirely unclear what if any relief could be accorded to plaintiff by the named defendants. Congressman Fish is sued individually and in that capacity lacks both the responsibility and the authority to enforce 14/2.[7]

In accordance with the foregoing (1) plaintiff's unopposed motion for leave to amend the complaint is granted; (2) the motion for the convening of a three judge court is denied; (3) defendant Fish's motion to dismiss is granted; and (4) the action is dismissed as against Peyser.[8]

SO ORDERED.

---

6. As noted in the Second Circuit's opinion, a similar claim was raised in *Lampkin v. Connor,* 239 F.Supp. 757 (D.D.C.1965), aff'd, 123 U.S. App.D.C. 371, 360 F.2d 505 (1966). Plaintiffs, a group of citizens from various states, likewise ". . . had not undertaken the difficult task of approximating what the resulting nation-wide reapportionment would be . . . ." *Sharrow v. Brown, supra,* 447 F.2d at 97. Their complaint was dismissed for lack of standing. The *Lampkin* court characterized as sheer speculation plaintiffs' allegations as to the result of compiling 14/2 reapportionment data.

The complaint of . . . plaintiffs that their votes are debased and diluted in value is a condition they share in common with citizens of all States where the right to vote is neither abridged nor denied. Thus what the . . . plaintiffs would have this Court do is decide a question and afford a remedy as to which their interest is remote and speculative and shared by millions of others. They are not personally aggrieved or affected in a legal sense by defendants' refusal to take future action in connection with the 1970 census in the manner these plaintiffs demand. They lack standing to sue.
*Lampkin v. Connor,* 239 F.Supp. at 761.

7. In *Sharrow v. Brown,* 447 F.2d 94, 97–98 (2d Cir. 1971), the Second Circuit identified other governmental entities that might arguably have the authority or responsibility to enforce 14/2.

8. Defendant Peyser has not participated in any of the motions presented for decision. Furthermore, she has never answered the complaint and is seemingly subject to a default judgment. However, it is clear that she is in no position to accord the plaintiff any of the relief sought. Thus I dismiss the action as against Peyser as well.